IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

GARY CRABB,

                Plaintiff,        Case No. 3:10 CV 1952

  -vs-

                                    MEMORANDUM OPINION

OHIO VETERANS HOME AGENCY,

                Defendant.

KATZ, J.

This matter is before the Court on the Motion for Summary Judgment (Doc. No. 20) of Defendant Ohio Veterans Home Agency ("OVH" or Defendant). The Court notes federal question jurisdiction under 28 U.S.C. §1331 and proper venue under 28 U.S.C. §1391. For the reasons stated below, Defendant's motion will be granted.

## I. BACKGROUND

Plaintiff Gary Crabb, an African American, began working for Defendant in 1992. Shortly thereafter he joined the union. In 1994 he was promoted to Cook 1, the position he occupied until the end of his employment in March 2009.

Defendant is a nursing home for veterans. It has a set of rules regarding not only food preparation and standard employee relations issues such as breaks and access to work food, but also prohibiting improper interaction between employees and residents. Such improper interactions include business relationships. Access to food issues included not only access to meals, but also when a cook could and should taste test food and prohibition on any consumption of food, other than taste testing, in most of Plaintiff's work area.

Defendant employs a progressive discipline scheme where further infractions within a certain period of time lead to harsher punishments for the same activities. From 1998 to 2004,

Plaintiff had a number of disciplinary issues. These included counseling memos, written reprimands, and two suspensions. Plaintiff often did not sign the disciplinary paper work, but in all cases admitted receiving it. He said that he would not sign if he disagreed with something in the paperwork, though he rarely could remember what.

By at least April 2006, Adam Brazie ("Brazie") was Plaintiff's direct supervisor, Craig Selka ("Selka") was Brazie's supervisor, and Naomi Twine ("Twine") was Defendant's EEO officer. Around this time, Defendant began changing some of its operating procedures, though without fundamentally changing the underlying rules. One of the changes included adjusting scheduled break times - an employee had to inform a supervisor prior to the scheduled break or risk losing that break. Another change regarded the actual preparation of food: where before a cook assembled and prepared an item as he or she saw fit, now there were prepared carts containing every item required for a meal in the correct amounts. This was meant to increase uniformity in preparation. In addition, Defendant increased enforcement of work rules.

On August 17, 2006, Plaintiff received a counseling for reading a newspaper at a time that was not his scheduled break time. He received a verbal reprimand for similar conduct on November 11, 2006. On December 3, 2006, he was given a written reprimand for twice eating where he should not. He received a one day suspension on March 25, 2007 for again eating in an inappropriate place and for refusing a work order. Like nearly all of his discipline, Plaintiff felt that these incidents were racially motivated, but could not say why or how.

In late 2007, Plaintiff filed an EEO complaint of discrimination with Twine. She conducted a meeting on December 3, 2007 with Plaintiff, Brazie, and Selka. Though Plaintiff could not recall what incident precipitated his complaint, he could say that he thought Brazie's

2

manner and speech were racially problematic. Further, he complained of excessive scrutiny and uncertain rules regarding tasting. According to Plaintiff, this meeting lead to sensitivity training for Brazie and Selka issuing tasting guidelines. Plaintiff also agreed to the right of his managers and supervisors to supervise him. Finally, Twine investigated Plaintiff's allegations of racial disparity and found none.

In March 2008, Plaintiff was nearly disciplined for eating a piece of cake in the kitchen. He was not disciplined because another employee offered a written statement which contradicted her earlier statement. Selka began investigating her inconsistent statements. He spoke with that employee and had Brazie take Plaintiff to an adjacent office at the same time. This was to prevent the two employees from conferring. Plaintiff claims that Brazie physically blocked the exit and refused innocuous requests to leave. Selka's questioning of the other employee concluded and he, along with another representative of Defendant and a union official, entered the office where Plaintiff waited. Plaintiff immediately demanded a different union representative. He then refused to answer any questions, even before he was informed of the reason for the questioning. His refusal persisted despite repeated warnings from all present that he could be subject to discipline. He then accused Selka of wanting to lynch him - Plaintiff admits making a lynching gesture, while Selka asserts it was accompanied with the words "hang me from a tree."

Selka told Plaintiff that he did not appreciate the lynching reference and then wrote down a description of the meeting. Selka then read the description aloud and when he reached the lynching accusation, Plaintiff made a remark to which Selka responded with a reference to Plaintiff's EEO complaint and his own intent to make use of the EEO office. Twine refused Selka's complaint due to his non-minority status.

3

As a result of his insubordination, Plaintiff received a ten day suspension. A union grievance succeeded in halving the time to five days. In July 2008, Plaintiff was counseled for tardiness and failure to prepare one of the items he was assigned.

In December 2008 Plaintiff was terminated for an inappropriate business relationship with a resident. He had asked a resident to change the stain on a desk. Plaintiff had provided all of the materials and expected to pay a fair price for the work. Before the end of the year, however, Plaintiff was reinstated pursuant to a last chance agreement.

On March 11, 2009, Defendant conducted a disciplinary hearing concerning one day when Plaintiff had to be reminded twice to cover his hair and issues regarding improper food preparation. Plaintiff admits that covering hair is an obvious requirement of his job for the sake of sanitation. He also admitted thirteen different occasions over the prior year when he had failed to follow food preparation instructions.

On March 16, 2009, Plaintiff resigned. He then filed a complaint with the Ohio Civil Rights Commission. After receiving a right to sue letter, he brought this action.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). The party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Ciminillo v. Streicher,* 434 F.3d 461, 464 (6th Cir. 2006); *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact."

*Williams*, 154 F. Supp. 2d at 1071; *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004) . The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

### III. ANALYSIS

Plaintiff's Complaint contains four causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* (Title VII). Count I alleges disparate treatment based on race; Count II alleges hostile environment based on race; Count III alleges retaliation; and Count IV alleges constructive discharge. Plaintiff's claims under 42 U.S.C. §1981 (Count V) and O.R.C. §4112 (Counts VII and VIII) are governed by the same standards as his Title VII claims. *Dews v. A.B. Dick Co.*, 213 F.3d 1016, 1020 n.2 (6th Cir. 2000) (*citing Boutros v. Canton Reg. Transit Auth.*, 997 F.2d 198, 202-03 (6th 1993); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981)). Thus, the Court will not separately address these claims or Count VI (punitive damages). Finally, because Title VII standards dispose of Plaintiff's claims, the Court need not address Defendant's immunity arguments or the scope of Plaintiff's agency complaints.

A Title VII case can be proven using either direct or circumstantial evidence. To establish a case of discrimination through direct evidence, Plaintiff must present "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in

6

the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Evidence is not direct if it requires any inference to reach the conclusion that Defendant discriminated against Plaintiff. *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006) (*quoting Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004)). Discrimination can be shown with circumstantial evidence under the Supreme Court's three step analysis: first, Plaintiff must establish a *prima facie* case particular to the type of discrimination alleged; second, Defendant must present a legitimate reason for its actions; third, Plaintiff must show that Defendant's legitimate reason is pretext disguising discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 721 (6th Cir. 2004) (*quoting Sr. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 518 (1993)). Finally, Plaintiff's "mere speculation cannot satisfy his burden of proving [discrimination]." *Id.* at 724.

*A. Disparate Treatment*

To demonstrate a *prima facie* case of disparate treatment under Title VII Plaintiff "must show that '(1) he ... was a member of a protected class; (2) he ... suffered an adverse employment action; (3) he ... was qualified for the position; and (4) he ... was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (*quoting DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)). Defendant disputes only the second and fourth elements.

The Court need not address Plaintiff's claim of adverse employment action here because he has not presented any evidence with regard to the fourth element. First, Plaintiff has not identified, or offered any other evidence regarding his replacement (or if he was replaced at all). Second, Plaintiff has failed to even present evidence of a similarly situated employee for the Court to consider. Without a comparable or replacement individual Plaintiff cannot proceed with a claim for disparate treatment through circumstantial evidence.

Plaintiff presents no direct evidence of discrimination. First, his brief explicitly invokes "an inference" incompatible with direct evidence. Doc. No. 24 at 15. Second, Plaintiff's unsupported belief that his treatment, especially his disciplinary history, was related to his race cannot carry his burden. His reference to his own previous allegations, especially his lynching gesture/accusation directed at Selka, provide no further substantiation. Finally, Plaintiff cannot rest on his version of Selka's statement, at that same meeting, concerning the EEO office. Plaintiff does not actually have a version of the event in evidence, merely argument of counsel and allegations in his Complaint. Conversely, Selka explicitly stated, under oath, that he referred to Plaintiff specifically, rather than African Americans as a group, and further that the statement was to register Selka's offense at Plaintiff's racial language. Examining all evidence in Plaintiff's favor does not help Plaintiff here.

Because Plaintiff can establish neither a *prima facie* case nor present any direct evidence the Court must grant Defendant summary judgment on the disparate treatment claims.

*B. Hostile Environment*

Plaintiff's *prima facie* hostile environment case under Title VII "is established if [he] shows that (1) [he] is a member of a protected class; (2) [he] was subjected to unwelcomed racial

8

harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with [his] work performance by creating an environment that was intimidating, hostile, or offensive; and (5) employer liability." *Clay v. UPS, Inc.*, 501 F.3d 695, 706 (6th Cir. 2007) (*citing Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)). Plaintiff has done little to develop or defend this claim. Even where he points to his discipline as potential harassment, he has nothing other than his mere speculation that it was based on race. The only other evidence he notes are his previous assertions of racial bias, including his accusation directed at Selka when Plaintiff refused to answer questions. These statements only show that Crabb thought about his race, not that his employer did; as before, Plaintiff cannot rest on his unsubstantiated speculation.

Plaintiff has failed to establish his *prima facie* case. Thus, the Court need not consider the issue of pretext and will grant Defendant summary judgment on Plaintiff's hostile environment claims.

*C. Retaliation*

Using circumstantial evidence, Plaintiff may "establish a prima facie case of retaliation by showing that: '(1) he ... engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.'" *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009) (ellipsis in original) (*quoting Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008)). There is no question of Defendant's knowledge. Plaintiff focuses on his 2007 EEO complaint as his protected action. He then points to three claimed adverse actions: his termination, harassment through increased discipline and scrutiny; and failure to investigate his claims of discrimination. The third

claim quickly fails because there is evidence that Twine examined discipline distributed by race in direct response to Plaintiff's complaints. Plaintiff has no evidence of failure to investigate to counter.

Plaintiff presents little evidence of causal connection between his termination and his EEO complaint, other than discipline that happened between the two. Not only did the final action come over one year after his complaint, but the question of whether Plaintiff's resignation was voluntary and, even more importantly, the intervening last chance agreement reversing an actual termination combine to present Plaintiff with too tall a hill to climb with temporal proximity alone. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524 (6th Cir. 2008) ("temporal proximity may be sufficient in a narrow set of cases").

However, Plaintiff does not rely only on assertion of temporally proximate discharge. He also raises claims that Defendant disciplined and scrutinized him after his complaint, both contributing to the causal connection with his final termination and acting as separate adverse action amounting to harassment.

While an increase in discipline following a protected activity may support a claim of retaliation, Plaintiff has merely presented that he was disciplined after his complaint, not that he was disciplined more. *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986). In 2006 and 2007, before filing his charge, Plaintiff received a counseling,[1] a verbal reprimand, a written reprimand, and a one day suspension. In 2008, after his charge, Plaintiff received two counselings and a ten day suspension (reduced to five by grievance), was terminated and

---

[1] Counselings are not officially discipline under OVH policy.

reinstated under a last chance agreement, and faced termination for two violations of the last chance agreement. Plaintiff faced a similar amount of discipline both before and after; the only difference is the escalating punishment due to a progressive discipline scheme. Evenly spread discipline over the time both before and after Plaintiff's complaint does not support a retaliation claim. *Hafford*, 183 F.3d at 515. Plaintiff particularly focuses on the suspension he received for insubordinately refusing to cooperate with an investigation by claiming that he was instead suspended for someone else's inconsistent statement. Plaintiff's gloss on this is divorced from reality, especially since he completely agrees with Defendant that he refused to answer any questions repeatedly and before he was even informed of the subject of the questions. Plaintiff was not disciplined for another employee's inconsistent statement, he was disciplined for not giving any statement of his own.

Plaintiff's allegations of increased scrutiny similarly present potential unsupported by evidence, at least other than Plaintiff's speculative belief. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588-89 (6th Cir. 2009). Further, his harassment claim does not contain any evidence of a change; this claim is better addressed under constructive discharge. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 791 (6th Cir. 2000) ("retaliatory harassment by a *supervisor* can be actionable in a Title VII case ") (emphasis in original). Thus, Plaintiff has not presented sufficient circumstantial evidence of a retaliation claim.

Plaintiff also claims to have direct evidence of retaliation. He rehashes his mischaracterization of his insubordination and adds in what he believes to be Selka's inconsistent approach to witness statements with regard to discipline.[2] Either of these, even if true, would

---

[2]

11

require at least one inference for connection to retaliation. In other words, these are not direct evidence.

Thus, Plaintiff has presented neither circumstantial nor direct evidence sufficient to establish a case of retaliation. Therefore, the Court will grant Defendant summary judgment on Plaintiff's retaliation claims.

*D. Constructive Discharge*

A stand alone constructive discharge claim is a specialized hostile environment or harassment claim. *Penn State Police v. Suders*, 542 U.S. 129, 133 (2004). Such a claim requires a showing beyond a normal hostile environment or harassment claim. *Id.* Thus, Plaintiff cannot succeed at showing constructive discharge by hostile environment since he has not shown normal hostile environment, let alone the higher showing.

Plaintiff's harassment claim rests on his disciplinary history, his vague assertions of animus, and three specific incidents. His disciplinary record does not demonstrate anything. He may claim that the discipline was unwarranted, but he has only offered his claim that he disagreed with some portions of the disciplinary documents. He cannot point to what and has not offered his version of events for the most part. His disagreement is the proverbial mere "metaphysical doubt." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Further, "unsupported accusations of antagonistic, hostile conduct on the part of [Defendant] does not create a genuine issue of material

---

Specifically, Plaintiff complains that one of his complaints was called a "He Said/She Said" situation and he was disciplined at a different time on a single witness's statement. Plaintiff fails to note that in the second situation, he has not presented evidence of his own contrary version of events, and just assumes that his understood denial would be enough.

fact" for constructive discharge. *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 887 (6th Cir. 1996).

Thus, Plaintiff is left with three incidents. First, he complains of Brazie blocking a door[3] as part of the inconsistent statement investigation. Second, Plaintiff complains of a time he lost a break, under a policy he understood, when Brazie did not accommodate him beyond Defendant's policy. Third, Plaintiff complains of times he had to work the kitchen alone because an overtime cook called off. Plaintiff fails to show how these three incidents created an "abusive working environment ... so intolerable that [his] resignation qualified as a fitting response." *Penn State*, 542 U.S. at 133. Because none of the three involve a lowering of Plaintiff (demotion, pay, job responsibilities, etc.), Plaintiff would have to show that they were either "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or [an offer] of early retirement or continued employment on terms less favorable than the employee's former status." *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001) (*quoting Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)). Clearly, Plaintiff has not raised the last issue. Thus, Plaintiff must show that the three things he complains of are sufficiently severe and calculated to cause his resignation. Because he has only his own speculation to show Defendant's intent, his claim fails.

Even if he had evidence of Defendant's intent, this Court has held that a voluntary resignation taken in the face of an impending justified termination is not a constructive discharge. *Abel v. Auglaize County Highway Dep't*, 276 F.Supp.2d 724, 736-37 (N.D. Ohio 2003) (*citing*

---

[3] In his complaint and argument, Plaintiff claims this has happened multiple times, but there is only evidence of the one instance.

*Kinney v. Ohio State Dep't of Admin. Serv.*, 469 N.E.2d 1007 (Ohio Ct. App. 1984)). While Plaintiff complains that his termination might not have been justified by attacking the underlying discipline, most of the time his attacks are excessively vague. Further, he admits much of the conduct (business interaction with a resident and thirteen cooking failures) underlying his termination and the termination impending when he quit (the last two disciplines). Thus, Plaintiff's constructive discharge claims fail and the Court will grant Defendant summary judgment.

Thus, Plaintiff has not presented any claims which survive summary judgment.

### IV. CONCLUSION

For the reasons discussed herein, Defendant's Motion for Summary Judgment (Doc. No. 20) is granted. Case closed.

                                                  s/ *David A. Katz*
                                                  DAVID A. KATZ
                                                  U. S. DISTRICT JUDGE